**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (818) 532-6499
E-mail: jpafiti@pomlaw.com

**Attorney for Plaintiff**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMAD AL LABADE, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ACTIVISION BLIZZARD, INC., ROBERT A. KOTICK, SPENCER NEUMANN, and COLLISTER JOHNSON, | |
| Defendants. | |

### CLASS ACTION COMPLAINT

Plaintiff Mohamad Al Labade ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which

included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Activision Blizzard, Inc. ("Activision Blizzard" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Activision Blizzard securities between August 2, 2018 and January 10, 2019, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Activision Blizzard develops and distributes content and services on video game consoles, personal computers (PC), and mobile devices.   The Company is headquartered in Santa Monica, California, and its common stock trades on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "ATVI".

3.      On April 29, 2010, the Company announced its entry, through its wholly owned subsidiary Activision Publishing, Inc. ("Activision Publishing"), into an agreement with Bungie, Inc. ("Bungie"), the developer of blockbuster game franchises including *Halo*, *Myth* and *Marathon*.   The agreement with Bungie gave Activision Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years.

4.      The partnership between Activision Blizzard and Bungie yielded the commercially successful *Destiny* franchise, a series of science fiction-themed video games.  In September 2014, Activision Blizzard released *Destiny*, the first installment in the franchise, developed by Bungie.  Activision Blizzard announced that the Company sold $500 million of *Destiny* into retail stores and first parties worldwide on the first day of its release, making the game the largest video game franchise launch in history at that time.  Over the following two years, Bungie developed and Activision Blizzard released four expansions for *Destiny*.  In September 2017, Activision Blizzard released a full sequel, *Destiny 2*.  On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week." To date, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2*.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance

policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the termination of Activision Blizzard and Bungie's partnership, giving Bungie full publishing rights and responsibilities for the *Destiny* franchise, was imminent; (ii) the termination of the two companies' relationship would foreseeably have a significant negative impact on Activision Blizzard's revenues; and (iii) as a result, Activision Blizzard's public statements were materially false and misleading at all relevant times.

6.     On January 10, 2019, Activision Blizzard and Bungie announced the end of their business relationship.  In a post on its website entitled "Our Destiny", Bungie stated, in relevant part:

> We have enjoyed a successful eight-year run and would like to thank Activision for their partnership on Destiny.  Looking ahead, we're excited to announce plans for Activision to transfer publishing rights for Destiny to Bungie.  With our remarkable Destiny community, we are ready to publish on our own, while Activision will increase their focus on owned IP projects.
>
> ***The planned transition process is already underway in its early stages***, with Bungie and Activision both committed to making sure the handoff is as seamless as possible.

(Emphasis added.)

7.     That same day, in an SEC filing, Activision Blizzard stated that Bungie "would assume full publishing rights and responsibilities for the Destiny franchise.  Going forward, Bungie will own and develop the franchise."

4

8.     Following these announcements, the Company's stock price fell $4.81 per share, or 9.37%, to close at $46.54 on January 11, 2019.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Activision Blizzard's principal executive offices are located within this Judicial District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired Activision Blizzard's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Activision Blizzard is a Delaware corporation with principal executive offices located at 3100 Ocean Park Boulevard, Santa Monica, California 90405. Activision Blizzard's common stock trades on the NASDAQ under the ticker symbol "ATVI".

16.     Defendant Robert A. Kotick ("Kotick") served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

17.     Defendant Spencer Neumann served at all relevant times as the Company's Chief Financial Officer ("CFO").

18.     Defendant Collister Johnson ("Johnson") served at all relevant times as President and Chief Operating Officer ("COO") of Activision Blizzard.

19.     The Defendants referenced above in ¶¶ 16-18 are sometimes referred to herein collectively as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Activision Blizzard's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their

6

issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Activision Blizzard develops and distributes content and services on video game consoles, personal computers (PC), and mobile devices.  The Company was formed in July 2008 as the result of a merger between Activision, Inc. and Vivendi Games, the holding company for the video game studio Blizzard Entertainment.

22.     Activision Blizzard is headquartered in Santa Monica, California.   The Company's common stock trades on the NASDAQ under the ticker symbol "ATVI".

23.     On April 29, 2010, the Company announced its entry, through its wholly owned subsidiary Activision Publishing, into an agreement with Bungie, the developer of blockbuster game franchises including *Halo, Myth* and *Marathon*.  The agreement with Bungie gave Activision Blizzard exclusive rights to publish and distribute video games developed by Bungie for the next ten years.

7

24.     The partnership between Activision Blizzard and Bungee yielded the commercially successful *Destiny* franchise, a series of science fiction-themed video games.  In September 2014, Activision Blizzard released *Destiny*, the first installment in the franchise, developed by Bungie.  Activision Blizzard announced that the Company sold $500 million of *Destiny* into retail stores and first parties worldwide on the first day of its release, making the game the largest video game franchise launch in history at that time.  Over the following two years, Bungie developed and Activision Blizzard released four expansions for *Destiny*.  In September 2017, Activision Blizzard released a full sequel, *Destiny 2*.  On September 15, 2017, Activision Blizzard announced that *Destiny 2* had "surpassed the original's records for engagement and digital sales in launch week." To date, Bungie has developed and Activision Blizzard has released three expansions for *Destiny 2*.

**Materially False and Misleading Statements Issued During the Class Period**

25.     The Class Period begins on August 2, 2018, when Activision Blizzard issued a press release announcing the Company's financial and operating results for the second quarter of 2018 (the "Q2 2018 8-K").  In the Q2 2018 8-K, Activision Blizzard touted successful user engagement metrics for the *Destiny* franchise, stating, in relevant part:

> During the quarter, *Destiny 2* released its second expansion, *Warmind*, with higher attach rates than *Destiny 1's* second expansion, and *Destiny 2* [Monthly Active Users] grew quarter-over-quarter.

8

26.     On August 2, 2018, Activision Blizzard also filed a quarterly report on Form 10-Q with the SEC for the quarter ended June 30, 2018 (the "Q2 2018 10-Q"). The Q2 2018 10-Q listed *Destiny* among the Company's "key product franchises", and informed investors that "[w]e have . . . established a long-term alliance with Bungie to publish its game universe, Destiny."

27.     The Q2 2018 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Kotick and Neumann, stating that "[t]he information contained in the [Q2 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

28.     On August 2, 2018, Activision Blizzard also held its Q2 2018 Earnings Call. On that call, Defendant Johnson state in relevant part:

> Turning to *Destiny*, Bungie and Activision continue to make updates in engaging content for *Destiny's* fans. *Destiny 2's* second expansion, *Warmind*, was released in Q2 with a higher attach rate than *Destiny 1's* second expansion, and *Destiny 2* monthly active users grew quarter-over-quarter.
>
> Now the next big step in the franchise is *Forsaken*, the major expansion coming out in September. We think this release will drive strong community engagement, particularly around the innovation in Gambit, a new competitive co-op mode which we think could be transformative for the way people play in first-person action games.

29.     After Defendant Johnson finished his prepared remarks, an analyst pressed him for "an update on the *Destiny* franchise and just your expectations for the major expansion this fall":

**Collister Johnson - Activision Blizzard, Inc.**

. . . As you'll remember, we've talked a lot about listening to the *Destiny* community to provide a deeper ongoing experience, more engaging moment to moment gameplay and a series of updates with better rewards in the ongoing live game.  ***And the team at Bungie and the team here at Activision have made a lot of strides in doing that, particularly the last two quarters, with the ongoing improvements to the end game and the overall gameplay experience.***

But in particular, with the *Warmind* expansion in May, that really showed us the ability to evolve the game and regrow engagement and regrow users. And now, that community, that's the most positive place since *Destiny 2* launched last September.  And so, now we have this big step with the launch of *Forsaken* which happens next month.

The encouraging part is players have had a great response so far with engagement online around the content announcement, hands-on gameplay of E3, which honestly led to the highest social sentiment we've seen in three years of E3; and a lot of excitement around Gambit, which brings this whole new way to play that's both cooperative and competitive between teams. And we really do think it could be transformative.

So we feel good about the content to come and the engagement we've seen in the community overall, and we feel really good about what Forsaken would do to build on that momentum. So we're excited for it, and we're in that countdown period now to put it in the hands of our fans.

(Emphasis added.)

30.     On September 4, 2018, the Company issued a press release announcing the worldwide release of its *Destiny 2* expansion, *Forsaken*.  The press release teased investors and gamers alike of "plenty of surprises in store in the weeks and months ahead, and we have been working all year with our community to make sure *Forsaken* will meet their expectations."

31.     On November 8, 2018, Activision Blizzard issued a press release announcing its financial and operating results for the quarter ended September 30, 2018 (the "Q3 2018 8-K").  In the Q3 2018 8-K, Activision Blizzard again touted successful user engagement metrics for the *Destiny* franchise, stating, in relevant part, that "*Destiny* MAUs grew quarter-over-quarter and year-over-year, driven by the launch of Forsaken and reach initiatives for the base game."

32.     On November 8, 2018, Activision Blizzard also filed a quarterly report with the SEC on Form 10-Q (the "Q3 2018 10-Q").  Again, the Q3 2018 10-Q listed *Destiny* among the Company's "key product franchises", and informed investors that "[w]e have . . . established a long-term alliance with Bungie to publish its game universe, Destiny."

33.     The Q3 2018 10-Q contained signed certifications pursuant to SOX by Defendants Kotick and Neumann, stating that "[t]he information contained in the [Q3 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

34.     On November 8, 2018, Activision Blizzard also held its Q3 2018 Earnings Call.  During the call, Defendant Johnson touted the Company's growth in active monthly users, "driven by *Destiny's* expansion, Forsaken, and by new reach initiatives, which grew *Destiny* monthly active users quarter on quarter and year over year."  After acknowledging that the release of the *Destiny 2* expansion pack *Forsaken* "did not achieve [the

11

Company's] commercial expectations", Defendant Johnson stated that "there's still work [for the Company] to do to fully reengage the core *Destiny* fan base."

35.     When pressed specifically on the "health of the *Destiny* franchise" Defendant Johnson failed to discuss any potential rift between the Company and Bungie which could lead to a split of their partnership:

**Drew Crum - Stifel, Nicolaus & Co., Inc.**

. . . ***You touched on this a little bit, but maybe spend a little more time on the health of the* Destiny *franchise*** and just what you've seen in terms of engagement post the *Forsaken* launch. Thanks.

**Collister Johnson - Activision Blizzard, Inc.**
. . . I guess I'd start by reiterating that *Forsaken* is a high-quality expansion of content into the universe.  Honestly, it's the highest-quality content we've seen in the franchise to date.  It really came out of Activision and Bungie working together to address community concerns post-*Destiny 2* holistically.  Talking to players, we knew it came from users really doing a fundamental review of how to offer a deeper end-game, greater powers and greater rewards, and engage players who seemed to be really enjoying the content.  In particular, it was very well received both by reviewers and by the community, and has ongoing deepening engagement by those that are playing it.

At BlizzCon, we announced that *Destiny*, the base game is free for two weeks, meaning download it by November 18, and you get to keep the base game forever.  We did that because we want the whole community loaded up and able to play it, but also because it's a live game.  And once you're in it, with the ongoing features and services and content, there's really deep engagement that takes place.  And part of it was also because we have not yet seen the full core reengage in *Destiny*, which has led to the underperformance against our expectations to date.  Some players we think are still in wait-and-see mode.  So when you're in, you're deeply engaged. If you're not, we're hoping now is the time to work and to bring players back in and to win them back.

(Emphasis added.)

12

36.     The statements referenced in ¶¶ 25-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) the termination of Activision Blizzard and Bungie's partnership, giving Bungie full publishing rights and responsibilities for the *Destiny* franchise, was imminent; (ii) the termination of the two companies' relationship would foreseeably have a significant negative impact on Activision Blizzard's revenues; and (iii) as a result, Activision Blizzard's public statements were materially false and misleading at all relevant times.

### **The Truth Begins To Emerge**

37.     On January 10, 2019, Activision Blizzard and Bungie announced the end of their business relationship.  In a post on its website entitled "Our Destiny", Bungie stated, in relevant part:

> We have enjoyed a successful eight-year run and would like to thank Activision for their partnership on Destiny.  Looking ahead, we're excited to announce plans for Activision to transfer publishing rights for Destiny to Bungie.  With our remarkable Destiny community, we are ready to publish on our own, while Activision will increase their focus on owned IP projects.
>
> ***The planned transition process is already underway in its early stages***, with Bungie and Activision both committed to making sure the handoff is as seamless as possible.

(Emphasis added.)

13

38.    That same day, in an SEC filing, Activision Blizzard stated that Bungie "would assume full publishing rights and responsibilities for the Destiny franchise. Going forward, Bungie will own and develop the franchise."

39.    Following these announcements, the Company's stock price fell $4.81 per share, or 9.37%, to close at $46.54 on January 11, 2019.

40.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Activision Blizzard securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Activision Blizzard securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff

believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Activision Blizzard or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Activision Blizzard;

- whether the Individual Defendants caused Activision Blizzard to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Activision Blizzard securities during the Class

15

Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

47.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Activision Blizzard  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

16

- Plaintiff and members of the Class purchased, acquired and/or sold Activision Blizzard securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

50.     Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

51.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material

17

facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Activision Blizzard securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Activision Blizzard securities and options at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Activision Blizzard securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Activision Blizzard's finances and business prospects.

54.     By virtue of their positions at Activision Blizzard , Defendants had actual knowledge of the materially false and misleading statements and material omissions

alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Activision Blizzard, the Individual Defendants had knowledge of the details of Activision Blizzard's internal affairs.

56.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Activision Blizzard.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Activision Blizzard's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Activision Blizzard securities was artificially inflated throughout the Class Period.

19

In ignorance of the adverse facts concerning Activision Blizzard's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Activision Blizzard securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, Activision Blizzard securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Activision Blizzard securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Activision Blizzard securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Activision Blizzard securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

60.     Plaintiff repeats and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Activision Blizzard, and conducted and participated, directly and indirectly, in the conduct of Activision Blizzard's business affairs.  Because of their senior positions, they knew the adverse non-public information about Activision Blizzard's misstatement of income and expenses and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Activision Blizzard's financial condition and results of operations, and to correct promptly

any public statements issued by Activision Blizzard which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Activision Blizzard disseminated in the marketplace during the Class Period concerning Activision Blizzard's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Activision Blizzard to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Activision Blizzard within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Activision Blizzard securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Activision Blizzard.  By reason of their senior management positions and/or being directors of Activision Blizzard, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Activision Blizzard to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Activision Blizzard and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Activision Blizzard.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: January 18, 2019                    Respectfully submitted,

                                          **POMERANTZ LLP**

                                          */s/ Jennifer Pafiti*
                                          Jennifer Pafiti (SBN 282790)
                                          1100 Glendon Avenue, 15th Floor
                                          Los Angeles, CA 90024
                                          Telephone:  (818) 532-6499
                                          E-mail: jpafiti@pomlaw.com

23

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com
E-mail: jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

24

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _____ MOHAMAD AL LABADE _____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Activision Blizzard, Inc. ("Activision" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Activision securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Activision securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Activision securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed _____JANUARY 16ᵗʰ 2019_____
                    **(Date)**

_____
                    **(Signature)**

____MOHAMAD AL LABADE____
         **(Type or Print Name)**

**Activision Blizzard, Inc. (ATVI)**                                         **Labade, Mohamad Al**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|------|------------------|-----------------------|----------------------|
| 11/28/2018 | Purchase | 20 | $50.7500 |
| 11/16/2018 | Purchase | 5 | $51.0000 |
| 12/10/2018 | Purchase | 3 | $47.2500 |